**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**CHARLESTON DIVISION**

BILLIE FIELDS, et al.,

               Plaintiffs,

v.                                CIVIL ACTION NO. 2:15-cv-1547

HEALTH CARE AND RETIREMENT
CORPORATION OF AMERICA, LLC, et al.,

               Defendants.


**MEMORANDUM OPINION & ORDER**


Pending before the court is the defendants' Motion to Dismiss and/or for Summary Judgment and to Compel Arbitration [Docket 6], Motion to Stay [Docket 8], and Motion to File Documents Under Seal [Docket 5]. The plaintiff has not responded to these motions, and the time to do so has passed. Therefore, the matter is ripe for my review. For the reasons set forth below, the Motion to Dismiss and/or for Summary Judgment and to Compel Arbitration is **GRANTED**. As a result, the Motion to Stay and the Motion to File Documents Under Seal are **DENIED as moot**.

### I.    Background

On November 14, 2012, Victoria Fields became a resident of Heartland of Charleston, a nursing home facility owned and operated by the defendants in Kanawha County, West Virginia.[1]

---

[1] There are four named defendants in this case: (1) Health Care and Retirement Corp. of America, LLC, doing business as Heartland of Charleston; (2) Manor Care, Inc., formerly known as HCR Manor Care, Inc., which, according to the plaintiff, was "an owner and a de facto 'licensee' of the nursing home," (Am. Compl. [Docket 1-1] ¶ 4); (3) Health Care and Retirement Corp. of America, which, according to the plaintiff, was "an owner and a de facto 'licensee' of the nursing home," (*id.* ¶ 12), and (4) Danny Davis, the Administrator of Heartland of Charleston. Throughout this Memorandum Opinion and Order, I refer to these entities and persons collectively as "the defendants."

Two days after her admission to the nursing home, Ms. Fields entered into a Voluntary Arbitration Agreement ("Arbitration Agreement") with Heartland of Charleston. The Arbitration Agreement bound Heartland of Charleston and its parent, affiliates, and subsidiary companies, as well as Ms. Fields and her successors, spouses, children, next of kin, guardians, administrators, and legal representatives. (Arbitration Agreement [Docket 6-1], at 2). In relevant part, the Arbitration Agreement provides as follows:

> 1. Agreement to Arbitrate "Disputes": All claims arising out of or relating to this Agreement, the Admission Agreement or any and all past or future admissions of the Patient at this Center, or any sister Center operated by any subsidiary of HCR ManorCare, Inc. ("Sister Center"), including claims for malpractice, shall be submitted to arbitration.

(*Id.* at 1). It also had a "Right to Change Your Mind" clause, allowing Ms. Fields to cancel the Arbitration Agreement within thirty calendar days of her admission to the nursing home. (*Id.* at 2). Ms. Fields did not avail herself of this option, and as a result, the Arbitration Agreement became binding on December 14, 2012.

Ms. Fields remained at Heartland of Charleston for just over a year. During this time, she allegedly suffered "serious injuries from a pattern of poor care, neglect and abuse rendered by Heartland [of Charleston] and [its] staff, which injuries included the delay in treatment resulting in death." (Am. Compl. [Docket 1-1] ¶ 33). Billie Fields, the personal representative of Ms. Fields's estate, filed suit against the defendants in the Circuit Court of Kanawha County, seeking damages for these alleged injuries. The defendants removed the case to federal court on February 6, 2015, pursuant to 28 U.S.C. § 1332, (*see* Notice of Removal [Docket 1]), and filed the instant motions one week later.[2] Primarily, the defendants argue that the plaintiff's claims fall under the

---

[2] According to the defendants' Notice of Removal, which has not been challenged by the plaintiff, the opposing parties are citizens of different states: the plaintiff is a citizen of West Virginia; defendant Health Care and Retirement Corp. of America, LLC, doing business as Heartland of Charleston, is a Delaware limited liability company with its principal

Arbitration Agreement, which is governed by the Federal Arbitration Act ("FAA"). Therefore, the defendants ask this court to compel arbitration and dismiss or stay the plaintiff's pending claims, in accordance with the FAA.

## II.    Legal Standard

The FAA provides that written arbitration agreements involving interstate commerce "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2 (2012). The FAA embodies "a congressional declaration of a liberal federal policy favoring arbitration agreements [and] create[s] a body of federal substantive law of arbitrability, applicable to any arbitration agreement within coverage of the Act." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983). A court must give "due regard" to this federal policy favoring arbitration and should resolve "ambiguities as to the scope of the arbitration clause itself in favor of arbitration." *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Jr. Univ.*, 489 U.S. 468, 475–76 (1989).

If a court determines that an arbitration agreement is governed by the FAA, it must enforce the agreement and stay "any suit or proceeding" pending arbitration of "any issue referable to arbitration" under the agreement. 9 U.S.C. § 3. As the Fourth Circuit Court of Appeals has observed, "[t]his stay-of-litigation provision is mandatory," and a district court "has no choice but

---

place of business in Ohio; defendants Manor Care, Inc. and Health Care Retirement Corp. of America are Ohio corporations with their principal place of business in Ohio; and Defendant Danny Davis is a citizen of Florida. (Notice of Removal [Docket 1], at 2–3). Furthermore, the defendants have concluded that the amount in controversy exceeds $75,000, given the allegations set forth in the Amended Complaint. (*Id.* at 3 (citing *Mullins v. Harry's Mobile Homes, Inc.*, 861 F. Supp. 22, 24 (S.D. W. Va. 1994) (explaining that when a specific dollar amount has not been pleaded, the court can apply "common sense" to the allegations of the complaint in determining whether the amount in controversy has been satisfied))). Based on these representations—and seeing no objections to them—I find that the defendants have established federal subject matter jurisdiction under § 1332 by a preponderance of the evidence. *See McCoy v. Erie Ins. Co.*, 147 F. Supp. 2d 481, 488 (S.D. W. Va. 2001) (holding that the defendant, as the party seeking removal, bears the burden of establishing diversity jurisdiction by a preponderance of the evidence); *Sayre v. Potts*, 32 F. Supp. 2d 881, 885 (S.D. W. Va. 1999) (same).

to grant a motion to compel arbitration where a valid arbitration agreement exists and the issues in a case fall within its purview." *Adkins v. Labor Ready, Inc.*, 303 F.3d 496, 500 (4th Cir. 2002).

The Fourth Circuit Court of Appeals has incorporated these requirements of the FAA into four factors that, if demonstrated by the litigant, allow him to compel arbitration and force the court to stay the case:

> (1) the existence of a dispute between the parties, (2) a written agreement that includes an arbitration provision which purports to cover the dispute, (3) the relationship of the transaction, which is evidenced by the agreement, to interstate or foreign commerce, and (4) the failure, neglect or refusal of the [nonmoving party] to arbitrate the dispute.

*Id.* at 500–01 (quoting *Whiteside v. Teltech Corp.*, 940 F.2d 99, 102 (4th Cir. 1991)). I evaluate each of these factors below to determine whether the FAA applies to the Arbitration Agreement at issue in this case.

## III.    Discussion

Beginning with the first factor, a clear dispute exists between the parties, as evidenced by the plaintiff's lawsuit against the defendants, the defendants' demand for arbitration, and the plaintiff's refusal to submit to arbitration. (*See* Mem. of Law in Supp. of Defs.' Mot. to Compel Arbitration ("Mem. of Law") [Docket 7], at 6 (stating that the plaintiff has "declined to submit this matter to arbitration")). The second factor is also present because the Arbitration Agreement, which expressly applies to "all claims" arising out of the patient's admission to Heartland of Charleston, (Arbitration Agreement [Docket 6-1], at 1), covers each cause of action raised in the plaintiff's Amended Complaint.[3]  Moreover, all of the named parties in this case are bound by the Arbitration Agreement. (*See id.* at 2 (listing the parties bound by the Arbitration Agreement)).

---

[3] Specifically, each cause of action concerns the defendants' alleged acts and omissions during Ms. Fields's stay at Heartland of Charleston. Count I alleges that the defendants' "acts and omissions during [Ms. Fields's] residency" violated West Virginia's Nursing Home Act, W. Va. Code § 16-5C-1 *et seq.* (Am. Compl. [Docket 1-1] ¶ 41). Count II

The third factor comes from the FAA's requirement that the arbitration provision at issue is one "involving" interstate commerce. 9 U.S.C. § 2. The Supreme Court has broadly interpreted this language, concluding that by using the word "involving," Congress intended "to provide for the enforcement of arbitration agreements within the full reach of the Commerce Clause." *Perry v. Thomas*, 482 U.S. 483, 490 (1987). The word "involving," the Supreme Court has said, "is indeed the functional equivalent of 'affecting.'" *Allied-Bruce Terminix Cos., Inc. v. Dobson*, 513 U.S. 265, 273–74 (1995). The defendants contend that the business of a long-term care facility affects interstate commerce, thereby satisfying the FAA's interstate-commerce requirement. Several courts have agreed with them. *See, e.g.*, *THI of N.M. at Hobbs Ctr., LLC v. Spradlin*, 893 F. Supp. 2d 1172, 1184 (D.N.M. 2012) (listing cases that found the FAA's interstate commerce requirement satisfied by the nursing home's purchase of supplies from out-of-state vendors or acceptance of payment from Medicare).

The facts of this case—as well as the liberal policy in favor of arbitration—lead me to align with these courts. As an initial matter, the corporate defendants in this case are incorporated and principally operated under the laws of Ohio. Furthermore, Heart of Charleston interacts with out-of-state entities on a daily basis. According to the defendants, Heart of Charleston "provides care and treatment for out-of-state patients, receives regular shipments of supplies from out-of-state vendors, purchases medical supplies from out-of-state businesses, receives payments from out-of-state insurance companies, and receives funds from the federal Medicare and Medicaid programs." (Mem. of Law [Docket 7], at 10). Considering this economic activity within

---

alleges that the defendants committed statutory negligence "during the course of [Ms. Fields's] residence" at Heartland of Charleston. (*Id.* ¶ 47). Count III alleges that the defendants committed common law negligence and reckless misconduct in their supervision of and care for Ms. Fields. (*Id.* ¶¶ 48–52). And Count IV alleges wrongful death under W. Va. Code § 55-7-5 *et seq.*, based on the defendants' failure to "act with reasonable care in the provision of care and services to Victoria Fields during the course of its nursing home operations." (*Id.* ¶ 56).

the "full reach of the Commerce Clause," *Perry*, 482 U.S. at 490, I find that Ms. Fields's admission to Heart of Charleston constitutes a transaction involving interstate commerce. *See Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52, 56–57 (2003) (finding that the FAA's interstate-commerce requirement, like Congress's Commerce Clause power, may be considered "in the aggregate").[4]

The fourth factor requires the litigant to show that the opposing party has failed, neglected, or refused to submit to arbitration. After the plaintiff filed her Amended Complaint, the defendants sent plaintiff's counsel a letter demanding arbitration in accordance with the Arbitration Agreement. (*See* Ex. D [Docket 7-4]). Plaintiff's counsel received the letter, as indicated by a signed return receipt, but has nevertheless declined to respond or move forward with arbitration. I interpret the plaintiff's silence as a refusal to submit to arbitration.

Having established the existence of the four factors set forth in *Adkins*, thus concluding that the FAA applies, I finally consider whether the Arbitration Agreement is valid under West Virginia's general principles of contract law. *See* 9 U.S.C. § 2 (providing that, under the FAA, an arbitration agreement "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract"); *Am. Gen. Life & Accident Ins. Co. v. Wood*, 429 F.3d 83, 87 (4th Cir. 2005) ("Although federal law governs the arbitrability of disputes, ordinary state-law principles resolve issues regarding the formation of contracts."). In West Virginia, "[i]t is presumed that an arbitration provision in a written contract was bargained for and that arbitration was intended to be the exclusive means of resolving disputes arising under the contract." *State ex rel. Clites v. Clawges*, 685 S.E.2d 693, 700 (W. Va. 2009) (quoting *Bd. of Educ.*

---

[4] I also note that the Arbitration Agreement specifically provides that: "The parties agree and intend that this Agreement . . . and the Patient's stays at the Center substantially involve interstate commerce, and stipulate that the Federal Arbitration Act ("FAA") and applicable case law apply to this agreement . . . ." (Arbitration Agreement [Docket 6-1], at 1). While not dispositive, this language supports my finding of interstate commerce.

*of the Cnty. of Berkeley v. W. Harley Miller, Inc.*, 236 S.E.2d 439 (W. Va. 1977)). The plaintiff has

not offered any reason to depart from this presumption, and the court finds none.

Accordingly, the defendants' motion to compel arbitration is **GRANTED**. As a result, the

FAA directs me to stay the case until the parties complete arbitration. 9 U.S.C. § 3. The Fourth

Circuit has held, however, that a stay is not the only available remedy under the FAA: "[D]ismissal

is a proper remedy [under section 3 of the FFA] when all of the issues presented in a lawsuit are

arbitrable." *Choice Hotels Int'l, Inc. v. BSR Tropicana Resort, Inc.*, 252 F.3d 707, 709–10 (4th Cir.

2001). As explained above, I **FIND** that all the issues raised in the plaintiff's Amended Complaint

are subject to the Arbitration Agreement, and therefore, I **GRANT** the defendants' motion to

dismiss.

### IV.     Conclusion

The defendants' Motion to Dismiss and/or Motion for Summary Judgment and to Compel

Arbitration [Docket 6] is **GRANTED** with respect to the motion to compel arbitration and the

motion to dismiss. The court **DIRECTS** the parties to proceed to arbitration consistent with the

terms of the Arbitration Agreement. The defendants' Motion to Stay [Docket 8] and Motion to

Seal [Docket 5] are **DENIED as moot**.

The court **ORDERS** that this case be **DISMISSED** and **STRICKEN** from the docket. The

court further **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any

unrepresented party.

ENTER:      May 7, 2015

JOSEPH R. GOODWIN
UNITED STATES DISTRICT JUDGE